Your Honors, Melissa Holyoake for Objector-Appellant Frank, and I'd like to reserve three minutes for rebuttal time. Your Honors, this case gave $200,000 to the class members, nearly a million to the attorneys, and the only other relief was an injunction that required a defendant to do something it was already doing. In effect, the attorneys were taking 82% of this constructive common fund. The District Court, in finding that was fair, made multiple reversible legal errors of law. Errors of law. First, the District Court erred in not relying on this Court's decision in Allen v. Bedolla. In Allen, the Court confirmed that when looking at settlement fairness, the Ninth Circuit required that the Court look at the economic reality. So in that case, the economic reality was that the attorneys, very similar to this case, received a million, the class members received $300,000, and the Court sent it back saying there, the attorneys were getting three times what the class was getting. Now, as I recall, your client has indicated that he would have bought this whether or not it was mislabeled. Is that right? That's correct. And would have paid the same price whether or not it was mislabeled. That's correct. How could any settlement have benefited him, meaning he says there was no harm to him, he cannot make a claim under any conceivable settlement? I don't get it. How even has standing? He is in the same shoes as every other class member. Well, no. Excuse me. I don't think that's right. There are class members who, and they're going to make claims if they want to, who say, well, listen, I read the label. If I had known what was really there, I wouldn't have paid the price. Now they're in a very different position from Mr. Frank. That's true. I know about 5% of the class members are, over 90% of the class members are in the same boat as my client. And my client, if the claim form. How can you say 90%? You're talking now. Over 92% of the class. Fixing and matching those who claimed and he who didn't claim at all. Yes, correct. And here's the distinction. If the claim form had not required him to say, I would not have bought this, I would not have bought this if I hadn't seen the label. If that wasn't required on the claim form. If he could just submit the claim form for relief, then the settlement would have benefited him. But, but, but I'm not sure you're taking my point yet. If I'm entitled to money from a defendant, when I say without anybody disputing it, and so I am not disputing it, I was not harmed by the defendant. That's preposterous. Well, that's not true that he wasn't harmed. Well, no. Wait a minute. Wait a minute. I thought we just established that he said, if the label had been truthful, I would have paid the same price no matter what. So you say he's harmed. How's he harmed? He, he is harmed because under plaintiff's theory, everyone overpaid regardless of whether they read it or not. Because overnight, 92% of the class didn't read the labels. Yeah. So every, so the class consists of everyone who bought the olive oil. Right? Whether or not they read the label or not. The class is defined as anyone who bought the olive oil in that certain class period. And plaintiff's theory is that you paid too much for it. So you should get, be getting money back. It's not, the plaintiff's theory is not you paid too much and you relied on this. That's not how the class is defined. The class is defined by anyone who purchased. If the class was defined by any, by requiring reliance on that label, then 90% of the class, over 90% of the class would go away. But how does that answer the standing question when we have evidence in this record that this particular individual wasn't harmed at all? But this particular individual was harmed. And, and I will. And could you explain how he was harmed? Because under plaintiff's theory, he paid too much. Doesn't sound like that's the theory that was adopted either by the court or the settlement. Because the only people entitled to recover are those who say, I would have paid less had the label been appropriate. If that's true, then the whole class fails. But that's not what the court looked at because this class changed significantly. When the first, when class certification was first looked at, it was a class of consumers of California consumers with California claims. There was no question over, did you rely on the label or not? It was, did you buy this during the time period? And if so, you pay too much, you get your money back. So counsel, you're saying that your client was, was harmed even though he didn't know it. If he paid too much for the product, even though he may not have been aware that he could have, could have asked for something charging less without the label. Precisely, Your Honor. And that's how over 90% of the class was, in the exact same shoes. What do we know that from? That is from defendant's statement who says that he, that they predict that over 92%, I believe it's 92%, of their, of their customers, it is of no importance to them where the imported from Italy, whether the olives are from all different countries or whether that statement imported from Italy has no importance to those customers. So in that respect, he's in the same shoes as the class, other class members. And the class, as defined, as the, as the court approved, was everyone who bought the, the olive oil in that time period, knowing or not knowing. But defining a class doesn't mean that all the members of the class are entitled to relief, even in not just a settlement, but in a lawsuit, correct? And to say in a judgment that it goes to litigation and the judge decides the case, correct? Well, if the class members don't, if the class as defined cannot, do not have Article III standing, then the class cannot be certified. And here, the class as defined presumably has Article III standing. And if he, if it doesn't, because they are like my client, who didn't rely, then the whole class fails. Because the whole class has to have standing. Did I answer your question? Yes, although I'm not entirely convinced by it. That is to say, you could certify a class, and later on, the judge may realize that some of the members of the class, thus defined, have suffered no injury. And then in the relief, offer relief to those who have been injured,  Yes, and, but the problem is, then you have inter-class conflicts, correct? Well, not necessarily. I mean, I guess you do. I mean, here's some people over here who have not been harmed, who'd like money anyway. Well, yes, and then... And there's some people who have been harmed and they like their money. But the people who haven't been harmed, I'm not sure that's a conflict that the judge needs to take into account. Well, but then those class members, for example, the ones that have been harmed, if they're in the same class as ones that haven't, then they're receiving a lot less than they should. There is a conflict there, right? Because it dilutes their recovery. That kind of goes to parsing out exactly what he's challenging. Because it seems that the foundation of your challenge really is that the fees are too high in relation to what the class got. The fees are... The settlement pie, the attorneys take too large a chunk of the settlement pie. And that is challenging the settlement itself. Well, of course, the conundrum there seems to be that all you would need to do is put a label on challenging the quote, class settlement itself, when in fact it's the attorney's fees that are the target. And were he challenging just the attorney's fees? Would you agree that he wouldn't have standing? If he were just challenging the attorney's fees? Correct. Yes, he would not. But he is seeking to turn over... But it does seem that it's a question of labeling because the reason he's... In effect, the reason he's challenging the attorney's fees is benchmarked against what the class got, which, of course, he doesn't get any of. So in the end, it does seem that it's a target on the attorney's fees. That's precisely why the settlement is unfair with having this segregated fee. Because if he was able to... If the fee was part of the whole... Was not clear sailing in a segregated fee and there was a decrease, it could return to the class. But he's challenging the whole settlement and all of the fee. And he has standing to do so under this court's precedent under Stetson because the court could provide relief by sending the case back and a better settlement could be produced. For example, one where the claim form does not require that attestation. And it could provide relief. The reality of that then is that if you take that approach, it's basically every class case, there's the possibility of vacating the award in relation to the judgment. So every class case would give someone an objector standing, right? Because it all folds back. No, well, not one in which they particularly disclaim the constructive common fund theory. And that's what this court's precedent says. If the if the objector says, no, I'm only I'm not bringing an objection under the constructive common fund, then under this court's precedent and Glasser and Nisly, no, they wouldn't have standing. But we are precisely invoking that that theory that that this is a settlement that as Bluetooth requires, you have to look at the whole settlement at every part of it. Do you put then a zero value on the injunctive relief in your calculations? Absolutely. The district court here erred as a matter of law in giving any value to the injunctive relief under this Ninth Circuit court's precedent of Kobe V.A.R.S. In Kobe, it was a very similar situation where the where defendant agreed to do something it was already doing. It was an FTCPK case, and it said, OK, well, under the settlement, you have to change your voicemails for two years. But they were already doing that. And the Ninth Circuit said that has no value to class members. The question is, when we're looking at this injunctive relief, when we're looking at the cash, the cash payout, everything, we have to look at what the reality is, because the class members are giving up their monetary damages claims in exchange for something. And what is that something? Well, I keep having that same trouble. The class members are giving up the monetary claims for damages that they didn't suffer. I don't get it. Well, and I think the problem is this reliance in the claim form. And it becomes it's really an issue because of the expansion of the class. When this case started, you had the California class, California claims, no reliance. Then it expanded to this nationwide class with the New Jersey. And then defendants said, oh, you need you need to have reliance here. I think it was disputed below whether that was required at all under the New Jersey statutes, a reliance on the on on the actual label. There was a dispute of that below. And I and whether or not that's true. The theory is that all of these class members, they suffered damages because they paid too much, whether they knew it or not, whether they relied on the label or not. That is their theory of your remaining time. Yes, please. Thank you, Your Honor. Good morning. May it please the court. My name is Adam Gutride. I represent the plaintiff class in this case. And with the court's permission, I'd like to reserve four minutes of our time for the counsel for the defendant, Salove. And he will be addressing. And I'll also try to help you. Thank you very much, Your Honor. He will be addressing the standing arguments that took up a lot of the prior argument. Unless your honor has a question for me, I will do my best as well to answer those questions. Your Honor, Your Honor, is this case is one in which the district court did everything that it has been instructed by the Ninth Circuit Court of Appeals, this court to do. It found, first of all, that despite what this court has called subtle signs of possible collusion or red flags, that there was no collusion, in fact, in the negotiation of the settlement. Second, it found that the settlement terms substantively were fair at a time adequate and reasonable under Rule 23E and, in fact, were better than the results that would have been obtained had the case gone to trial. Third, it found that the fee award was reasonable based on the actual load star, which it made specific findings about the number of hours worked and whether the rates were appropriate. And it only awarded 59 percent of the load star. And fourth, it did the cross check, which is an optional cross check, and found that the fee award was appropriate when cross-checked against the value of the injunctive relief or even against only a fraction of the value of the injunctive relief. How do you respond to the argument that the injunctive relief is of no value because the defendant was already doing what the injunction required it to do? There are several responses, Your Honor. First is that this court in Lane v. Facebook directly rejected that argument by holding that if the defendant would be free to restart its program, then the injunction does, in fact, have relief. And the, Your Honor, I believe was on the panel of that argument. What the court said was, absent a judicially enforceable agreement, Facebook would be free to revive the program whenever it wanted. Thus, it is false to say that Facebook's promise never to do so was illusory. Beyond that, Your Honor, this injunction doesn't just prevent them from going back to the old label. It specifically requires them to use only one specific word, that is the word imported on the label, whenever a different label might imply that the olives were from Italy. So, for example, a phrase like packed in Italy or any kind of phrase like that is not allowed if it would imply that the olives are from Italy. The Kobe case that the objector relies on is in opposite. In that case, the injunction did not benefit any class members at all because the finding that this court made in that case was that the people who were in the class were unlikely to be subject to future debt collection actions by the same defendant. Furthermore, in that case, unlike here, there was no monetary relief provided. So when the Kobe court said that you can't just have an injunction that provides no monetary relief and that a value, that case is based on the specific facts there that are completely unlike those here. The injunction in this case, furthermore, Your Honor, was valued by an expert witness whose testimony as to that value was based on a regression analysis that is uncontroverted in the record. It's true that the defendant at class certification criticized his methodology. Those criticisms were overruled under Daubert and the testimony was admitted and the objector seizes on those same criticisms again. But the objector has not actually put in any other evidence, for example, a different regression analysis based on other pricing, new pricing in the market to show that there would be some other valuation, which is exactly the same situation that was faced in the Schaeffer versus Continental Casualty case that's cited on the brief. I believe Judge Gould was on that panel in which the court said that there was an expert, an expert actuary who hired by class counsel who estimated the value of the settlement and over 60 million while the objectors did not provide an expert valuation of the settlement. And in that case, the court, this court affirmed a fee award that was one point four times the load start. Beyond that, Your Honor, there's another case, which is the Laguna case, another case in which Judge Gould participated, where the court in this court in that case did exactly the same thing that the district court did in our case. In the Laguna case, what the opinion says is that the plaintiffs may be overstating the value of the settlement at $20 million. The district court reasonably surmised that even if the settlement was $4 million, only a part of the amount claimed by plaintiffs, the attorney's fees award would still be within the normal bounds of reasonableness. That quotation, Your Honor, is identical to what the district court here did in it's an excerpt of record page 14, note five, where it said that even if we only take 20 percent of the assumed value of the injunction and only take the actual claims that were paid, the $210,000 in actual claims, the fee award is still less than 20 percent of the settlement value. So most of most of the defense, I'm sorry, most of the objector's argument is based on the economic reality test. Another opinion from Judge Gould in the Allen v. Bedolla case. You know, you know, since this is a standing argument. Yes. You want to. But I'm thinking about the economic value of a settlement. Yes. The behavior will be that Mr. Frank and a lot of other people are sufficiently indifferent to whether or not it's actually imported from Italy or these olives are grown in Italy, that they would have paid, you know, they just picked it off the shelf. They paid it. That's actually fairly normal consumer behavior. But I think it's also pretty apparent that it was of some value in the pricing that the price was therefore higher. And if the label had been proper, the price would have been lower and Mr. Frank would have paid a lesser price. And the people who were indifferent, but of course are not indifferent to money, would have been happy to pay a lower price, but weren't reliant. That's an awful lot of people who paid more than they would have had the labeling been proper. And the settlement leaves out all those people. How is this a fair settlement? So, Your Honor, I agree with everything Your Honor said up until the very last sentence. And the distinction that I would draw, Your Honor, is that there is nothing in this claim form and the district court so found at length at the hearing and in the order, there is nothing in this claim form that requires an affirmation of reliance. The only thing that claimants need to say is that if the label hadn't said imported from Italy, they either wouldn't have bought it or they would have paid less. So basically they can't. That sounds exactly like reliance to me. Well, Your Honor, the reason that's different from reliance is because it is exactly what you said, that Mr. Frank himself, if we are correct, that there is a price premium because of this label, then Mr. Frank would have paid less. Now, he doesn't agree that he would have paid less. Well, no, he would have paid less because that would have been the price on the shelf. That's right. And therefore, he could have filed a claim. He could have absolutely filed a claim, just like the other tens of thousands of people filed claims. I don't get that. Well, that is what the district court found. And I can explain it in more length, but basically there is no. I wish you would, because I don't understand it yet. Okay. So the point is, Your Honor, that nobody, what the defendant wanted to do here in this claim form and why they insisted upon this is because they didn't want people to make claims who basically had no relationship to this case or who, as Mr. Frank has done, completely plead themselves out of court of any possible way of making a claim. Well, no, you still haven't explained it, but let me explain to you again what I think is going on here. You admit that because of the false labeling, a premium was allowed to be charged, correct? That's our theory. In fact, yes. Yeah, yeah. So everybody who bought it paid more than they should have paid had the labeling been accurate. And that includes Mr. Frank. Yes, Your Honor. And therefore, if the labeling had been proper, he would have been paid less. Therefore, the misconduct by the defendant harmed him. Yes, Your Honor. All that is true. And everybody in Mr. Frank's position who didn't read the label, but would have been happy to pay less, were harmed in an equal degree. Yes. And all of those people, it seems to me, as I read the claim form, who said, I didn't read the label, I didn't care about the label, I just would have done whatever, whatever was on it, whatever was on the label, I just paid the price. I don't read the claim form as allowing them to claim. Okay. So I understand what you were saying, except that I think that... Am I right that people in Mr. Frank's position cannot satisfy what's in the claim form? It depends on what you mean by Mr. Frank's position. Everything that you said before... Well, I'll tell you what I mean by Mr. Frank's position. Mr. Frank says, I was indifferent to what the label said. I just paid it and had the label said imported from Greece, I would have paid the same price. That's what he said. Okay. That's Mr. Frank's position. So anybody in Mr. Frank's position can file a claim as long as they don't take the position that Mr. Frank has affirmatively taken here, which is that this label does not affect the price. That's the position he's taken. I don't think he says that. I think he says it didn't affect what my behavior would have been. And those people absolutely can make a claim. And the district court said that at the hearing. Let's have a look at the claim form. What's the claim form say? Do you have a copy of it in front of you? That's a good question, Your Honor. I believe it's in the record, but I don't know. Since we're talking about whether or not somebody can make a claim out of the form, it'd be nice to have the form. It's not in the record, unfortunately. I know that if you look at the record on page one of five, it has a statement that Mr. Frank would not aversion in the paragraph eight. So, Your Honor, that's my four minutes that I'm holding for. Do you want to answer any further on Judge Fletcher's question? It sounds like he was about to formulate the question, but I'm happy to. Well, I just want to see what the claim form says. Okay. So the line in question, in page 104? Page 105, paragraph eight says it has this. Yeah. So the sentence at issue, which is, by the way, a very minor sentence in the middle of the paragraph, the bottom of the claim form, et cetera, says, if the products had not included the phrase imported from Italy on the label, I would not have made the purchases or paid the prices charged. Well, yeah, it sounds like Mr. Frank, given what he says, wouldn't, I think he's disqualified. He can't say that. He, he doesn't say it. He refuses to say it. I know. Well, but there are, but that, but that doesn't mean that other people in the class who would have purchased it anyway are incapable of paying, saying that because it depends on what that sentence means to the average reader. I get it. Okay. Okay. Thank you, Your Honor. Good morning, Your Honors. Good morning. Sean comments on behalf of the defendant, Sela of North America. I should raise this. Your Honor, the objector argues, or Your Honors, the objector argues that the Supreme Court in Devlin held that as long as you are a member of a class, then you have appellate standing to, to object and pursue an appeal.  On this interpretation of Devlin, the objector argues that the Ninth Circuit's holding in NRA First Capital Holdings, that mere membership in a settlement class does not give you appellate standing has been overruled. But the Ninth Circuit, just six months after Devlin was decided, looked at Devlin, looked at this question and reaffirmed that mere membership in a settlement class does not convey appellate standing. You have to look at the facts of the circumstance. And here we do have pretty unique facts. We have an objector submitting a declaration and making arguments that affirmatively preclude them from established standing in two different ways. The first is, as already been pointed out, the objector has said that the statement at issue, imported from Italy, is meaningless to him and is puffery.  Puffery is not actionable. You have no cause of action. If the statement at issue is puffery, that's his position, takes him right out of the game right from the, from the start. But on top of it, he goes on to say that he would have bought the product anyways. He would have paid the same price, which goes to the benefit of the bargain. And the last one to address your question, Your Honor, was he does dispute the theory that plaintiff is advanced in this case. He refuses to accept the opinion of plaintiff's expert that the label had an impact on the actual price in the real world. And it's that problem that resulted in the objector not being able to sign on to the claim form. Because if someone agrees with the claim form, then all they're saying is that the price they were charged, not their willingness to pay, was impacted. And that, that's the difference between Mr. Frank and the other people who submitted claim forms in this case and why the district court made a finding that there was no one else like Mr. Frank who had offered this interpretation and was unwilling to accept the premise of the litigation as framed by plaintiff, which is that if you have any change in a label, it has some impact on price. And therefore, whether you're ignorant or not, it could have impacted the amount you paid. In terms of standing, you can go back to a lot of our cases and the premise you start with is absolutely true, just being a member of a class does not give you the standing. But if, as his counsel suggests, he's not really challenging the attorney's fees as a standalone, and she concedes that would put him outside of the standing arena, but in effect he's challenging self-dealing and potential collusion leading to the excessive attorney's fees, which, which goes back then to the overall settlement, which could be vacated as a whole. Why wouldn't that at least give him standing to be here? And then we would argue about whether or not the various Ninth Circuit factors are met. So to be sure in the, in the Neasley case versus versus the Neasley case, the Neasley case might give you standing, or Loebant's case, I think as well. It might give you standing. The difference here is that you have to give up something, right? As to be aggrieved, what is it that he's being asked to give up? And if due to his affirmative statements for two different reasons, independent reasons, he has no potential claim under the complaint that's been filed in this case, then no matter what happens with the settlement, he is not giving anything up, nor are we, as, as you pointed out, getting anything from him in exchange for this release, and that would be the difference, which is in all the other cases, Devlin's a great example, the objector in that case was a member in a class where they were no longer going to receive a COLA benefit, a cost of living adjustment. So just being in the class meant that you had a financial injury, and that would be the presumption here as well. Being in the class would give you some kind of standing to participate unless you affirmatively introduce something to pull yourself out of the case and say, no, in my particular instance, there's no way I'm injured. The same thing with the, uh, first capital case, a plaintiff affirmatively showed that they were not harmed by the defendant's stock trading. In fact, they made a profit. And that's why the court said, well, in this particular instance, this unique set of facts, you as an individual don't get to participate. You don't have standing to object. Let me just go out on a further limb and that would be if the, if we were to reverse and it went back to the district court and the district court vacated the settlement completely, would he be in a different position then? No, Your Honor, I don't think he would be because he, he's already now taken a position that there's no theory under which he can recover. He has no potential claim. So you would say that even if the incomplete settlement had to be redone, he's basically pleaded himself outside of any recovery? Yes, because, and I hope I'm allowed to continue to answer your questions, Your Honor, because if the concept of a settlement is we're also looking at what would happen in the event of a judgment. And now we know if we went to a judgment and this individual wanted to submit a Your Honor, he's told us that this is puffery, that he would not have paid a different price and that he disputes the theory. He does not agree that there was an increase in the charge or a change in his willingness to pay. And therefore he could not be entitled to any monetary relief. Well, you lost me on one point and I realize we're taking you over, but if the judgment is premised upon a finding by the court that the false labeling allowed a higher price, that's a conclusion of the court and he can disagree with the conclusion of the court, but the court has told him you paid a higher price. And the fact that he might think otherwise doesn't disqualify him. You know, the court said you did pay a higher price. But you could have situations, Your Honor, where a plaintiff or an absent class member's conduct results in them not being able to participate in a favorable judgment. Well, I understand that. But could you respond to what I just said? Sure. So I was, I was, sorry, trying to get there in a roundabout way, which was that for instance, in the Schaefer case, there was a plaintiff who was subject to arrest judicata because they had pursued a claim and lost it. So even though there's a finding by the court that every class member would otherwise be entitled to relief, that person was barred. I don't know. We, as a defendant, we was under Bersena. We still would have every defense we would otherwise have. So if an individual, if as a class, the presumption. But he's a member of the class. He's not opted out of the class. And he now, as a member of a class, is told you paid a higher price. His private opinion as to whether or not he did or not at that point, I think doesn't matter. He's entitled to recovery because the court says you paid a higher price because of the illegal act of the defendant. And the answer, Your Honor, I apologize for, for taking two tries to get to here, is that the finding by the court is a presumption and it has significant. You know, a finding by court is not usually called a presumption. It's not, Your Honor, but in the class context, at least my understanding under Berseno is that even if there's a finding of a liability as to the class as a whole, a defendant is not deprived of their due process right to come back in and say, I know that you made a finding as the class as a whole, but as to this particular individual, I'm able to show you why they are not. Okay. You and I are not speaking the same language. I apologize, Your Honor, but I appreciate the opportunity. I'm not sure another try is going to help. Thank you. Thank you for the opportunity though. Just a few moments, a few things to, um, for rebuttal. We never argued collusion. We argued that this was self-dealing. Self-dealing. Yes. And that you had to look at the settlement, which what the reality under Allen, under Dennis, Dennis in this, the Ninth Circuit said, and Dennis, what are the real numbers? And, and here, the real numbers are a million for the attorneys, 200,000 for the class. That, that percent, that disproportion does not, um, is untenable under Ninth Circuit law. For the injunctive relief, uh, plaintiffs rely on Lane v. Facebook. But if you look at that case, the, what the court said is that there, there was real cash there, $9 million of cash. So the injunctive relief is of little moment. It doesn't, it didn't matter. If there was $9 million of real cash here, we wouldn't be here. And then the, the, another case, the Kobe v. A.R.'s case, a plaintiff, um, argues that in that case that the injunction had no value because it didn't benefit any of the class members. Well, that was only part of the, of the Ninth Circuit's decision there. There, the, the, the court said, yes, it's not likely that there's going to be some repeat calls to some of these class members, but it didn't say that none of the class members would receive this. It went on to say, if there were some voicemail messages to some of these class members, there would be no value to them because there's no difference between settlement, before settlement and after settlement that didn't require defendant to do anything different than it was doing before. And in Subway case, the Seventh Circuit case that we cited, that's precisely what the judge did there. You look at the state affairs before and after, that's what you determine. What is the value, the consideration you're giving to the class members? The, the plaintiff relied on the expert analysis, um, and said that the, that the, uh, district court had agreed with the expert analysis. The district court, um, allowed it as admissible, uh, and that's at the record at E.R. 208, but it, but the district court refused to look at the data sets or, and said she would leave that for the trier of fact, but here the, the analysis has to, what it was error to even allow it to be admissible because there the expert had actual data. He didn't apply that to his model. Instead, he, he predicted the sales data from 2015 onward, even though he had real data. That is falsified expert analysis. I could say in my model shows that Enron made a hundred billion dollars in 2000, but that's a falsified opinion. If the real data shows there was no profit there, you have to, if you have the actual data, you have to apply it and you can't just assume, oh, well then if, then we'll just take 20% of the value of, of whatever the expert opined to. It has to be excluded. 20% of zero is zero under either method. The expert's valuation that the injunctive relief was worth 19 is wrong because you can't assume 20% of zero is, is anything more than zero. Thank you. Thank you. Thank you. The case just argued Kumar versus Sal of North America is submitted. Thank all counsel for your argument this morning.
judges: McKeown, W. Fletcher, Gould